UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Dennis M. Natke, *et al.*,

    Plaintiffs,

v.                                  Case No. 09-11304

                                        Honorable Sean F. Cox

North Branch Area School District,

    Defendant.

_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dennis Natke II ("DN") is a minor student who was suspended from his high school baseball team after he was charged with, and pleaded guilty to, stealing a case of beer from a local store. Following DN's suspension for a portion of the baseball season, his father, as next friend, filed this action alleging that Defendant's actions violated DN's constitutional rights. Plaintiff also asserts a breach of contract claim against Defendant under state law. The matter is currently before the Court on Defendant's Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral argument on January 28, 2010. For the reasons that follow, the Court shall GRANT Defendant's Motion for Summary Judgment.

### BACKGROUND

Plaintiff Dennis M. Natke, as next friend for DN, filed this action against Defendant in state court on or about April 1, 2009. Plaintiff's Complaint alleges two counts: "Breach of Contract" (Count I); and "Claim for Relief 42 U.S.C.A. Sec 1983" (Count II). Defendant removed the action to this Court, asserting federal question jurisdiction.

1

After the close of discovery, Defendant filed this Motion to Dismiss and/or for Summary Judgment on November 19, 2009.

After Plaintiff failed to file a response in opposition to the motion within the time permitted by the local rules, this Court issued an order requiring Plaintiff to show cause why the unopposed motion should not be granted. Plaintiff then filed a brief opposing the motion on December 21, 2009.

This Court's practice guidelines for motions for summary judgment, which are incorporated into the Scheduling Order, provide that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Docket Entry No. 4).

Both parties complied with the Court's practice guidelines for motions for summary judgment, to the extent that: 1) along with Defendant's motion and supporting brief it filed "Defendant's Statement of Material Facts Not in Dispute" ("Def.'s Stmt.") and 2) along with Plaintiff's Response, Plaintiff filed a "Statement of Material Facts Not in Disputes" (Pl.'s Stmt."), which largely mirrors Defendant's Statement.

The following material facts are gleaned from the parties' statements and the evidence submitted by the parties.

Plaintiff Dennis Natke II ("DN") is the minor child of Dennis M. Natke. (Compl.). On December 13, 2008, DN was a junior at North Branch High School ("NBHS") and a member of the school's varsity baseball team. (Def.'s Stmt. at ¶ 1; Pl.'s Stmt. at ¶ 1). In order to participate in the forthcoming 2009 baseball season, DN signed a form entitled "Consent to Participate in Athletics." (Def.'s Stmt. at ¶ 2; Pl.'s Stmt. at ¶ 2; Ex. C to Def.'s Motion). That form was also signed by DN's mother. (Def.'s Stmt. at ¶ 3; Pl.'s Stmt. at ¶ 3).

Upon signing the form, DN and his mother were provided with a copy of a document known as the NBHS "Athletic Handbook." (Def.'s Stmt. at ¶ 4; Pl.'s Stmt. at ¶ 4; Ex. D to Def.'s Motion). Since DN had participated in athletics during each of his previous years at NBHS, he and his mother were familiar with both the Consent Form and the Handbook. (Def.'s Stmt. at ¶ 5; Pl.'s Stmt. at ¶ 5).

The Handbook specifically states that participation in athletic programs is deemed to be a "privilege," not a right. (Def.'s Stmt. at ¶ 7; Pl.'s Stmt. at ¶ 7). The Handbook states that if a student is found to have committed "gross misconduct," then he/she will be suspended for a minimum of one-third (1/3) of the remaining athletic season. (Def.'s Stmt. at ¶ 8; Pl.'s Stmt. at ¶ 8). The Handbook defines the term "gross misconduct" in the following terms:

> 2. GROSS MISCONDUCT
> The student-athlete is a role model for other students and a representative of the school. Therefore, the student-athlete must not engage in behavior that is inappropriate. Students shall not engage in acts of gross misconduct including behavior which school officials consider conduct unbecoming an athlete and a representative of the North Branch Area Schools. *Gross misconduct may include, but is not limited to, acts of theft, extortion, vandalism, forgery, assault, harassment, sexual misconduct, hazing or initiation of other students, fighting, or*

> *gross disrespect.* Depending upon the severity of the incident penalties may range from restitution, community service, suspension from athletic competition, dismissal from the squad, or a combination of penalties. *School officials will make a determination on whether the misconduct falls under the penalties in the athletic handbook for gross misconduct.*

(Def.'s Stmt. at ¶ 1; Pl.'s Stmt. at ¶ 1; Ex. D to Def.'s Motion at 5) (emphasis added). Thus, under the Handbook, it is incumbent on school officials – like Mr. Fish – to determine if a given student infraction/violation is sufficiently severe that it amounts to "gross misconduct." (Def.'s Stmt. at ¶ 10; Pl.'s Stmt. at ¶ 10).

On December 13, 2008, DN – then 16 years old – stole a case of beer from the Sunrise Convenience Store in North Branch, Michigan. (Def.'s Stmt. at ¶ 11; Pl.'s Stmt. at ¶ 11). In turn, DN was charged with retail fraud by the North Branch Police Department – a charge to which he pleaded guilty. (Def.'s Stmt. at ¶ 12; Pl.'s Stmt. at ¶ 12).

On or about December 15, 2008, NBHS Athletic Director James Fish learned of the incident with DN. (Def.'s Stmt. at ¶ 14; Pl.'s Stmt. at ¶ 14). After speaking with DN and Chief DeTavernier of the North Branch Police Department, Mr. Fish concluded that DN's conduct constituted "gross misconduct" under the terms of the Handbook. (Def.'s Stmt. at ¶ 15; Pl.'s Stmt. at ¶ 15). Accordingly, and commensurate with the terms of the Handbook, DN was suspended for one-third of the 2009 baseball season. (Def.'s Stmt. at ¶ 16; Pl.'s Stmt. at ¶ 16).

Plaintiff contends that DN's suspension was unduly harsh and that two other students ("Student A" and "Student B") were punished less harshly for similar acts of misconduct. (Def.'s Stmt. at ¶ 17; Pl.'s Stmt. at ¶ 17).

Student A is a member of the NBHS basketball team who allegedly took a pair of shoes from a Birch Run High School ("BRHS") basketball player during a game at BRHS. (Def.'s

Stmt. at ¶ 19; Pl.'s Stmt. at ¶ 19). The shoes never left the locker room, and they were promptly returned to their rightful owner that same day. (Def.'s Stmt. at ¶ 20; Pl.'s Stmt. at ¶ 20). Since the incident occurred at BRHS, Mr. Fish deferred to BRHS Athletic Director Phillip Periard on the issue of whether or not to involve the police. (Def.'s Stmt. at ¶ 22; Pl.'s Stmt. at ¶ 22). Mr. Periard concluded that the incident involving Student A was not sufficiently serious to warrant police involvement. (Def.'s Stmt. at ¶ 22; Pl.'s Stmt. at ¶ 22).[1] After investigating the matter further, Mr. Fish determined that Student A would be suspended for one-tenth of the 2008 basketball season.

Student B is also a member of the NBHS basketball team. He allegedly stole a piece of candy from the North Branch Food Center. (Def.'s Stmt. at ¶ 24; Pl.'s Stmt. at ¶ 24). The North Branch Police Department did not bring charges against Student B. (Def.'s Stmt. at ¶ 25; Pl.'s Stmt. at ¶ 25). After investigating the matter, Mr. Fish determined that Student B would be suspended for one-tenth of the 2008 basketball season. (Def.'s Stmt. at ¶ 26; Pl.'s Stmt. at ¶ 26).

Ultimately, Mr. Fish determined that DN deserved a longer suspension than Student A and Student B; only his infraction – which resulted in a finding of criminal liability by the Police and the Courts – was sufficiently "severe" that it amounted to "gross misconduct" under the Handbook. (Def.'s Stmt. at ¶ 27; Pl.'s Stmt. at ¶ 27).

## ANALYSIS

A.  <u>Defendant Is Entitled To Summary Judgment On Plaintiff's § 1983 Claims.</u>

---

[1] Pl.'s Stmt. asserts that "federal law" required Mr. Periard to report this incident to the police, but offers no authority in support of that assertion. (Pl.'s Stmt. at ¶¶ 21 & 22).

Plaintiff alleges two distinct constitutional violations in this action. First, he claims that Defendant violated his equal protection rights under a "class of one" theory. Second, he claims that Defendant violated his right to due process. For the reasons below, the Court shall grant summary judgment in favor of Defendant with respect to both claims.

1. <u>Plaintiff Has Failed To Establish A Constitutional Violation Based On A Class Of One "Theory."</u>

The Supreme Court has recognized that the Equal Protection Clause can give rise to an equal protection claim under a "class of one" theory. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A plaintiff has a high burden, however, in establishing such a claim. "To present a class of one claim a plaintiff must demonstrate that he has been intentionally treated differently from others who are similarly situated and that there is no rational basis for the difference in treatment." *Benjamin v. Brachman*, 246 Fed.Appx. 905, 927 (6th Cir. 2007).

"To succeed on a 'class of one' equal protection claim, Plaintiff must first prove that [he] has been treated differently from similarly situated individuals." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed.Appx. 826, 836 (6th Cir. 2009). "To satisfy this threshold inquiry," Plaintiff must show that he "and other individuals who were treated differently were similarly situated in all material respects." *Id*.

"Where a plaintiff succeeds in identifying similarly-situated individuals, plaintiff must also (1) refute *every conceivable basis* that might support the government action, or (2) demonstrate that the challenged action was motivated by animus or ill-will." *Benjamin,* 246 Fed.Appx. at 927 (emphasis added).

Here, Defendant contends that Plaintiff cannot establish that he was treated differently than similarly situated individuals. Defendant contends that Plaintiff is not similarly situated to

the two other students who were suspended by the District. Defendant also contends that its suspension of Plaintiff meets the rational basis test. In support of its motion, Defendant notes that while the Sixth Circuit does not appear to have addressed a class of one claim arising in a high school context, a number of other courts have done so. Defendant then cites and discusses how those cases support its request for summary judgment here.

In response, Plaintiff notes the rational basis test and then states, without further explanation:

> This logic helps the Plaintiff in the case at bar. Further, the Sixth Circuit has never addressed a class of one claim.[2]
> In a thorough opinion, Judge Kravitz rejected plaintiff's claim on two (2) separate grounds. Again the Defendants cite several cases, but none have the relevance of bearing of that of the Plaintiff in the instant case.
> failed as a matter of law.

(Pl.'s Br. at 5).

Having considered the parties' respective arguments, the Court agrees that Defendant is entitled to summary judgment. In his response, Plaintiff does not even attempt to establish that the two students he seeks to compare himself with are similarly situated. Moreover, the undisputed facts show that they are *not* similarly situated. Of the three students, Plaintiff was the only student who was convicted of a crime. In addition, unlike Plaintiff's infraction, the other two incidents did not involve a controlled substance (i.e., alcohol).[3]

---

[2] Contrary to Plaintiff's response, the Sixth Circuit has addressed class of one claims. Although the Sixth Circuit does not appear to have addressed class of one claims in this particular context, the same legal framework addressed in *Taylor, Benjamin* and *Olech* still applies.

[3] Possession of alcohol independently violates the District's rules. (*See* Def.'s Ex. D at 4-6).

Moreover, even if Plaintiff could create an issue of fact as to whether he was treated differently than similarly situated students, Plaintiff has not established that Defendant lacked a rational basis for its actions. Here, Plaintiff has not carried his heavy burden of negativing every conceivable basis for Defendant's action. *Taylor*, 313 Fed.Appx. at 837; *see also Klimik v. Kent County Sheriff's Dept.*, 91 Fed.Appx. 396 at 400 (6th Cir. 2004).

Further, Plaintiff has not even alleged, much less offered any evidence to establish, that Defendant's "actions were in any way motivated by ill-will or animus." *Taylor,* 313 Fed.Appx. at 837-38; *see also Klimik*, 91 Fed.Appx. at 401 ("Second, [plaintiff] does not allege any facts or produce any evidence suggesting that defendants' actions were motivated by animus or ill will.").

Accordingly, the Court shall grant summary judgment in favor of Defendant with respect to Plaintiff's class of one claim equal protection claim.

2. Constitutional Violation Based On Due Process Violation:

Defendant contends that Plaintiff's due process claim must also be dismissed. Defendant notes that in *Board of Curators, Univ. of Mo. v. Horowitz,* 435 U.S. 78 (1978), the "Court held that federal courts could review the academic decisions of public institutions under a due process standard. However, for the purposes of the analysis, the *Horowitz* Court merely assumed (i.e., rather than declared) that due process provided a right to continued enrollment/participation, free from arbitrary dismissal." (Def.'s Br. at 12). Defendant notes that concept was revisited in *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985). Defendant notes that in *Ewing* the Court again assumed the existence of a constitutionally protected interest in continued enrollment in the academic program and dismissed the claim because the plaintiff's dismissal

8

was not arbitrary.

Defendant takes the position that Plaintiff's suspension was not arbitrary, assuming he had a constitutional right to be free from arbitrary treatment by the school. Defendant further notes that the suspension at issue here was from "interscholastic athletics; which are a privilege and not a right." Thus, Defendant contends that, as a threshold matter, Plaintiff has no constitutionally protected right to participate in school athletics.

In response to Defendant's motion, Plaintiff's brief states as follows, with no further explanation or analysis:

> The concept of an implied contractual right to be free from arbitrary treatment by one's school was revisited in *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985). Again Defendants address a case pertaining to college students and not that of K-12 and therefore is not relevant to the case at bar.
> Finally, it also bears mentioning that Plaintiff's suspension involved voluntary participation in interscholastic athletics. This fact is significant because being a member of a high school baseball team is a "privilege," but the school district cannot arbitrarily punish some students or student athletes while ignoring others. Plaintiff's due process claim should pursue to jury trial.

(Pl.'s Br. at 5).

The Court shall grant summary judgment in favor of Defendant with respect to Plaintiff's due process claim.

To proceed with a due process claim, a plaintiff must first show a protected life, liberty or property interest. Only after meeting that requirement can the plaintiff proceed by showing that such interest was "abridged without appropriate process." *Ferenca v. Hairston*, 199 F.3d 1244, 1247 (6th Cir. 1997).

Here, Plaintiff was not suspended or expelled from school. Thus, unlike *Horowitz* and *Ewing*, this action *does not* involve an alleged constitutionally protected property interest in

continued enrollment in *an academic program*. Rather, in this case, Plaintiff was suspended from participating in *extracurricular athletics*. This distinction is key because "[i]t is well established that students do not have a general constitutional right to participate in extracurricular athletics." *Lowery v. Euverard*, 497 F.3d 584, 588 (6th Cir. 2007). In response to Defendant's motion, Plaintiff has offered no authority whatsoever to establish that he has a constitutionally protected interest in continued participation on the baseball team.

Without first showing that Plaintiff has a constitutionally protected property interest with respect to playing on the high school baseball team, Plaintiff cannot establish that his interest was "abridged without appropriate process." *Ferenca,* 199 F.3d at 1247; *see also Ward v. Hart*, 2001 WL 739490 (E.D. Mich. 2001).

Moreover, even if the approach taken in *Horowitz* and *Ewing* applied here, Plaintiff has still not established that Defendant's actions in suspending Plaintiff from the team were arbitrary under the undisputed facts presented here.

Accordingly, the Court shall grant summary judgment in favor of Defendant on this claim.

B.  Plaintiff's Breach Of Contract Claim Also Fails On Multiple Grounds.

In its Motion for Summary Judgment, Defendant challenges Plaintiff's breach of contract claim on multiple grounds. First, Defendant contends that Michigan law does not recognize a student's claim for breach of contract against his or her own public school district. Defendant relies on numerous cases, from both Michigan and foreign jurisdictions, to support this position, including: *Cuddihy v. Wayne State Univ. Bd. of Governors*, 163 Mich. App. 153 (1987); *Amaya v. Mott Comm. College*, 1997 Mich. App. LEXIS 3817 (1997); and *Higginbottom v Keithley*, 103

F.Supp.2d 1075 (S.D. Ind. 1999). Second, Defendant contends that the Handbook is not a contract. Third, Defendant contends that even if the Handbook could be construed as a contract, Plaintiff cannot establish that Defendant breached that contract because Plaintiff received the very punishment called for by the Handbook.

The Court agrees that this claim fails on multiple grounds. As Plaintiff's Counsel acknowledged at oral argument, Plaintiff cannot identify a single case to support his position that, under Michigan law, a student can bring a breach of contract claim against a public school. Moreover, the Court concludes that the authority relied on by Defendant establishes that such claims are not cognizable under Michigan law.

In addition, even if such a claim were cognizable, and the Handbook could be construed as a contract, Plaintiff has not established that Defendant *breached* it in any event. It is undisputed that the Handbook: 1) provides that if a student is found to have committed gross misconduct, then he or she will be suspended for a minimum of one-third of the remaining athletic season (Def.'s Stmt. at ¶ 8; Pl.'s Stmt. at ¶ 8); and 2) gives school officials the discretion to determine whether misconduct constitutes gross misconduct. (Def.'s Stmt. at ¶ 1 & 10; Pl.'s Stmt. at ¶ 1 & 10; Ex. D to Def.'s Motion at 5). After DN pleaded guilty to retail fraud, Defendant exercised that discretion and determined that DN's actions constituted gross misconduct. Accordingly, and *commensurate with the terms of the Handbook*, DN was suspended for one-third of the 2009 baseball season. (Def.'s Stmt. at ¶ 16; Pl.'s Stmt. at ¶ 16).

CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary

Judgment is GRANTED and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

        S/Sean F. Cox
        Sean F. Cox
        United States District Judge

Dated: February 8, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 8, 2010, by electronic and/or ordinary mail.

        S/Jennifer Hernandez
        Case Manager